# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-40914

United States Court of Appeals
Fifth Circuit

**FILED**
September 13, 2016

Lyle W. Cayce
Clerk

KENNETH TONEY,

Plaintiff–Appellant,

v.

STATE FARM LLOYDS; ROLANDO RENTERIA,

Defendants–Appellees.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:13-CV-183

Before HIGGINBOTHAM, OWEN, and ELROD, Circuit Judges.

PER CURIAM:*

Kenneth Toney sued his insurer, State Farm Lloyds (State Farm), after it declined to pay a portion of the claim he filed after a storm damaged his roof. He sought damages for breach of contract and violations of various provisions of the Texas Insurance Code and Texas Deceptive Trade Practices Act. The district court entered summary judgment for State Farm, concluding as a

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## No. 14-40914

matter of law that Toney's policy did not provide coverage for the repair at issue. We affirm.

### I

The roof on Kenneth Toney's home was damaged by hail when a storm swept through Mission, Texas in March 2012. Toney filed a claim with his homeowner's insurance carrier, State Farm, but the parties could not agree on the extent of the damage or the costs of repair. He invoked his policy's appraisal provision, and the appraisers valued the claim at $67,431.47.

Toney's roof was constructed using spaced decking—slats of plywood, spaced several inches apart, to which wooden shingles were nailed. The decking itself was not damaged by the storm, but Toney believed the relevant building ordinances required him to replace the slats with solid sheathing, and the appraisers' assessment allocated funds for him to do so.

Residential construction and repairs in Mission are governed by the International Residential Code (IRC), which was drafted by the International Code Council (ICC). Texas adopted the IRC as it existed on May 1, 2001, and it "applies to all construction, alteration, remodeling, enlargement, and repair of residential structures in a municipality."[1] Texas law allows municipalities to "establish procedures (1) to adopt local amendments to the International Residential Code; and (2) for the administration and enforcement of the International Residential Code."[2]

After the storm, the City of Mission issued two letters related to roof decking, both signed by "Joe Hernandez, Building Inspector" and addressed "To Whom It May Concern." The first, dated October 24, 2012, stated:

> It has been confirmed by the ICC that the City of Mission, Texas require[s] diaphragm bracing for all wood frame

---

[1] Tex. Loc. Gov't Code Ann. § 214.212(b).

[2] *Id*. § 214.212(c).

2

construction as per IRC.  (Reference AJ301.1 & 301.2.1.1 IRC.)
The minimum requirement for roof deck is 7/16" OSB sheathing;
this includes roof decks under cedar shakes.

> According to the ICC, 1" x 4" spaced decking does not provide
> the necessary sheer strength to withstand hurricane strength
> wind loads in Hidalgo County.

The second letter, issued on January 22, 2013, "retract[ed]" the first:

> After further inquiry and discussion with the International
> Code Council, the City of Mission is retracting the previous letter
> dated October 24, 2012 in relation to the requirement of "OSB
> sheathing requirements for roof decks under cedar shakes" for re-
> roofs.
>
> The ICC has confirmed that in new construction "wood
> shingles shall be installed on solid sheathing" as required by
> Chapter 9 of the International Residential Code.  The ICC also
> stated that if we were dealing with a re-roof, it is considered as a
> repair and if the underlying sheathing is discovered to be damaged
> only that portion is to be repaired.  In other words, if the roof has
> pre-existing spaced sheathing, the code does not require solid
> sheathing to be placed for a re-roofing project.

State Farm accepted the bulk of Toney's claim but provisionally withheld
$9,076.63, the portion of the award allocated for replacement of the roof
decking.  In doing so, it cited a "coverage question" as to whether Toney's policy
"require[d] payment for the cost of solid decking when replacing a wood shake
roof."  The policy provided that, when the covered dwelling is damaged by an
insured loss, State Farm would pay for

> the legally required changes to the undamaged portion of the
> dwelling caused by the enforcement of a building, zoning or land
> use ordinance or law if the enforcement is directly caused by the
> same Loss Insured and the requirement is in effect at the time the
> Loss Insured occurs.

A similar provision applied to the "increased cost to repair or rebuild" portions
of the covered dwelling actually damaged by an insured loss:

> When the dwelling covered under COVERAGE A -
> DWELLING is damaged by a Loss Insured we will pay for the

No. 14-40914

increased cost to repair or rebuild the physically damaged portion
of the dwelling caused by the enforcement of a building, zoning or
land use ordinance or law if the enforcement is directly caused by
the same Loss Insured and the requirement is in effect at the time
the Loss Insured occurs.

State Farm ultimately denied the portion of Toney's claim that relied on
the ordinance or law provision, citing the January 2013 letter from the building
inspector and concluding that the applicable building code did not require that
the spaced decking of Toney's roof be replaced with solid decking. At some
point, Toney completed his roof using inexpensive composition shingles to
prevent further damage to his home.

Toney sued State Farm and a State Farm adjuster, Rolando Renteria, in
Texas state court. He asserted claims for breach of contract, failure to
promptly pay an insurance claim or deny coverage, and violations of bad-faith
provisions of the Texas Insurance Code and the Texas Deceptive Trade
Practices Act. Although both Toney and Renteria were citizens of Texas, State
Farm removed the case to federal court, asserting that Renteria was
improperly joined and therefore that his co-citizenship with Toney did not
deprive the court of subject-matter jurisdiction. The district court ultimately
dismissed the claim against Renteria and granted summary judgment in favor
of State Farm. Toney now appeals.

## II

We must satisfy ourselves not only of our own jurisdiction, but also of
that of the district court.[3] This case was removed to federal court even though
Toney and a defendant named in the complaint, State Farm adjuster Rolando
Renteria, are both citizens of Texas. The complaint alleged Renteria "was
assigned as an individual adjuster on the claim" and was liable on certain

---

[3] *Mitchell v. Maurer*, 293 U.S. 237, 244 (1934).

4

extra-contractual claims. Since this case presents no federal questions, the district court had jurisdiction only if there was diversity of citizenship.

The district court concluded that Renteria was improperly joined and that his presence did not destroy diversity jurisdiction. To establish improper joinder, the party seeking a federal forum must demonstrate that there is either "actual fraud in the pleading of jurisdictional facts" or "no reasonable basis for the district court to predict that the plaintiff might be able to recover" against the nondiverse defendant.[4] The district court may "pierce the pleadings" in appropriate circumstances to determine whether such a reasonable basis exists.[5] Here, the defendants argued in their Motion for Summary Judgment, as they did in their Notice of Removal, that Renteria "was not involved in [Toney's] claim."[6] Toney has not contradicted this assertion nor pointed to any evidence in this regard. We therefore conclude that the district court had no "reasonable basis" to predict that Toney might be able to recover against Renteria. Renteria was improperly joined.

The amount in controversy is measured as of the time of removal.[7] In addition to actual damages and attorney fees, it also includes any statutory damages and punitive damages sought.[8] Toney's demand letter, attached to

---

[4] *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc).

[5] *See id.* (stating that where "plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder," the district court "may, in its discretion, pierce the pleadings and conduct a summary inquiry"); *Travis v. Irby*, 326 F.3d 644, 648-49 (5th Cir. 2003) (noting plaintiff may "'pierce the pleadings' and consider summary judgment-type evidence" to determine whether joinder is fraudulent); *Badon v. R J R Nabisco Inc.*, 224 F.3d 382, 389 (5th Cir. 2000) ("[W]e have consistently recognized that diversity removal may be based on evidence outside the pleadings to establish that the plaintiff has no possibility of recovery on the claim or claims asserted against the named resident defendant.").

[6] The defendants noted that Renteria's non-involvement "[was] not being asserted" as a ground for summary judgment "but there is no intent to waive this assertion for purposes of diversity jurisdiction."

[7] *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000).

[8] *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998).

the removal petition, reflects that the amount in controversy was in excess of $75,000.  The district court had jurisdiction over the case.

### III

We review a district court's grant of summary judgment de novo, applying the same standards as the district court.[9]  Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[10]  The moving party is entitled to summary judgment if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[11]  To avoid summary judgment, the nonmoving party must supply "evidence on which the jury could reasonably find for the plaintiff."[12]  Mere "conclusory allegations, speculation, [or] unsubstantiated assertions are inadequate to satisfy the nonmovant's burden."[13]

The interpretation of an insurance policy is a matter of state law, and the district court's conclusions in this regard are reviewed de novo.[14]  Under Texas law, the insured bears the burden of establishing that a claim falls within the coverage of the policy.[15]  When the interpretation of a policy is at issue, "[t]erms . . . that are subject to more than one reasonable construction are interpreted in favor of coverage."[16]

---

[9] *Int'l Fid. Ins. Co. v. Sweet Little Mex. Corp.*, 665 F.3d 671, 679 (5th Cir. 2011) (quoting *DePree v. Saunders*, 588 F.3d 282, 286 (5th Cir. 2009)).

[10] FED. R. CIV. P. 56(a).

[11] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[12] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[13] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (citing *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994)).

[14] *Anco Insulations, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 787 F.3d 276, 281 (5th Cir. 2015) (per curiam).

[15] *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 782 (Tex. 2008).

[16] *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 133 (Tex. 2010).

No. 14-40914

Toney's policy provides that State Farm will pay for "the legally required changes to the undamaged portion of the dwelling caused by the enforcement" of a building ordinance "if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs." State Farm contends that summary judgment on the contractual claim was appropriate because changes to Toney's roof decking were not legally required. Toney disagrees and argues the district court erred in denying his cross-motion for summary judgment.

As noted above, Texas adopted the IRC in full, and it has not been formally amended in any relevant respect by the City of Mission.[17] The IRC "applies to all construction, alteration, remodeling, enlargement, and repair of residential structures in a municipality."[18]

Repairs to existing dwellings are governed by IRC § AJ301.1, which requires that repair work conform to the IRC standards for new construction.[19] IRC § R907.1 adds two rules pertaining to repairs to roofing materials. First, "[r]oof repairs to existing roofs and roof coverings shall comply with the provisions of Chapter 34 of the International Building Code."[20] Chapter 34 of the IBC, in turn, provides that "[a]dditions, alterations or repairs to any building or structure shall conform with the requirements of the code for new construction."[21] Second, IRC § R907.1 provides that "more than 25 percent of

---

[17] TEX. LOC. GOV'T CODE ANN. § 214.212. The City of Mission adopted the IRC as well. City of Mission Municipal Code § 18-32.

[18] TEX. LOC. GOV'T CODE ANN. § 214.212(b).

[19] IRC § AJ301.1 ("Except as otherwise required herein, work shall be done using like materials or materials permitted by this code for new construction."). This provision is found in Appendix J of the 2000 IRC.

[20] IRC § R907.1 (emphasis removed). This provision is found in Chapter 9.

[21] IBC § 3402.1. It also provides that "[a]lterations or repairs to an existing building or structure that are non-structural . . . are permitted to be made with the same materials of which the building or structure is constructed." IBC § 3402.3. State Farm does not argue that this provision applies here, perhaps because roof decking is probably not "non-structural."

7

the roof covering of any building shall not be removed and replaced within a 12–month period unless the entire roof covering is made to conform to the requirements for new roofing."

Neither IRC § AJ301.1 nor the first provision of IRC § R907.1 require the replacement of undamaged materials. By their terms, they only require that the materials actually used and repairs actually undertaken conform to the requirements for newly constructed dwellings. Chapter 34 of the IBC expressly provides that "[p]ortions of the structure not altered and not affected by the alteration are not required to comply with the code requirements for a new structure."[22] Since the parties agree that Toney's roof decking was not damaged and the repair could be performed without replacing the spaced decking, these provisions do not legally require the replacement of the decking.

Additionally, the "25 percent" requirement is inapplicable to Toney's claim because it requires, at most, replacement of the "roof covering." The roof covering and roof deck are distinct elements of the roof,[23] so this section could not have required Toney to replace his undamaged spaced decking with solid decking. Toney points to no other provisions of the IRC that indicate the replacement of his decking was legally required.

Toney relies on the building inspector's October 2012 letter. He argues that the letter "explicitly set[s] forth . . . that the IRC required solid decking when repairing wood shingled roofs." But the letter confines itself to a general description of the rules governing new construction and repairs of damaged elements of a structure. In particular, the letter states that "[t]he minimum requirement for roof deck is 7/16" OSB sheathing; this includes roof decks under cedar shakes" and that "spaced decking does not provide the necessary

---

[22] IBC § 3402.1. Chapter 34 of the IBC is incorporated into the IRC by operation of IRC § 907.1.

[23] *See* IRC § R202 (defining "roof covering" as "[t]he covering applied to the roof deck").

sheer strength to withstand hurricane strength wind loads in Hidalgo County." Nothing in the text of the letter suggests that *un*damaged decking must be replaced or abrogates the principle that unaltered portions of an existing structure need not conform to requirements for new structures.[24] Even assuming, without deciding, that the building inspector had authority to alter the regulations adopted by the state and by Mission, there is no clear statement that he intended to do so.[25]

Toney asserts that the October 2012 letter was relevant to Toney's situation because it "specifically cites a Code provision pertaining to repairs." The code provision in question is IRC § AJ301.1, which provides only that "work shall be done using like materials or materials permitted by this code for new construction." But as the discussion above notes, this bears only on the materials and methods used for repairs actually made; it creates no requirement that undamaged materials be replaced.

Toney contends that the relevance of the October 2012 letter is reinforced by the January 2013 letter. That letter "retract[ed]" the earlier one "in relation to the requirement of 'OSB sheathing requirements for roof decks under cedar shakes' for re-roofs," and concluded that "if [a] roof has pre-existing spaced sheathing, the code does not require solid sheathing to be placed for a re-roofing project." Because the January 2013 letter "retracted" the earlier one, Toney contends, the earlier one must be at odds with the January letter's conclusion that there was no requirement to replace undamaged decking.

---

[24] *See* IBC § 3402.1 ("Portions of the structure not altered and not affected by the alteration are not required to comply with the code requirements for a new structure.").

[25] *Cf. Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) ("Congress, we have held, does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes.").

No. 14-40914

Toney's reading of the inspector's October 2012 letter is consistent with his position. But the IRC, Texas statutes, and Mission ordinances do not support Toney's legal theory.

Toney has also submitted a declaration from his roofer, asserting among other things that "the City of Mission was enforcing the solid decking requirement for wood roofs" during the relevant period. However, the existence of a legal requirement is a question of law not susceptible to proof by declarations and other similar evidence.[26] Whether the applicable building ordinances "legally required" Toney to replace his roof decking is a question of law, and the only relevant fact—whether Toney's roof decking was damaged, which it was not—is not in dispute. None of the potential fact issues raised by Toney are material to this coverage question, and State Farm is entitled to judgment as a matter of law.

*     *     *

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[26] *See City of New Orleans v. BellSouth Telecomms., Inc.*, 690 F.3d 312, 322 (5th Cir. 2012) ("[D]etermining the meaning of [New Orleans] ordinances poses questions of law."); *Goodman v. Harris Cty.*, 571 F.3d 388, 399 (5th Cir. 2009) ("[A]n expert may never render conclusions of law."); *see also State Farm Fire & Cas. Co. v. Lange,* 480 F. App'x 309, 313 (5th Cir. 2012) (per curiam) (unpublished) (citing *Fid. & Cas. Co. of N.Y. v. Lott,* 273 F.2d 500, 502 (5th Cir. 1960)) ("When the terms of a contract are unambiguous and the facts underlying a contract claim are undisputed, whether coverage exists under the contract is a question of law.").