# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 23-1310

———————————————

Colin Henderson; Wende Kelsey

*Plaintiffs - Appellants*

v.

State Farm Fire and Casualty Company

*Defendant - Appellee*

————————

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

————————

Submitted: January 9, 2024
Filed: September 6, 2024

————————

Before SMITH, Chief Judge,[1] GRUENDER and SHEPHERD, Circuit Judges.

————————

SMITH, Chief Judge.

———————————————

[1]Judge Smith completed his term as chief judge of the circuit on March 10, 2024. *See* 28 U.S.C. § 45(a)(3)(A).

Colin Henderson and Wende Kelse (collectively, "the Homeowners") appeal the district court's[2] order granting summary judgment to State Farm Fire and Casualty Company (State Farm) and dismissing the Homeowners' claims for breach of contract and bad faith. We affirm.

## I. *Background*

On August 10, 2020, a derecho[3] swept through Iowa and damaged the Homeowners' property located in Cedar Rapids. The Homeowners filed a claim with their insurer, State Farm. Their policy promised payment of the actual cash value (ACV)[4] of any covered loss, minus their deductible. If the facts warranted, they might also have been entitled to the cost of repairs in excess of the ACV up to the replacement cost value (RCV). The policy stated that "to receive any additional payments on a replacement cost basis, [the Homeowners] must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify [State Farm] within 30 days after the work has been completed." R. Doc. 22-5, at 39. The policy also provided that if the parties did not agree on the value of a loss, either the Homeowners or State Farm could invoke an appraisal process after providing to the other party itemized documentation showing each specific dispute. And the policy included a one-year limitation on filing suit that would begin to run on the date of any damage.

---

[2]The Honorable Leonard T. Strand, then Chief Judge, now United States District Judge for the Northern District of Iowa.

[3]A derecho is "a large, fast-moving complex of thunderstorms with powerful, straight-line winds that cause widespread destruction." *Derecho*, Merriam-Webster's Unabridged Dictionary, https://unabridged.merriam-webster.com/unabridged/derecho (last visited Aug. 26, 2024).

[4]The policy defined "actual cash value" as "the value of the damaged part of the property at the time of loss, calculated as the estimated cost to repair or replace such property, less a deduction to account for pre-loss depreciation." R. Doc. 22-5, at 22.

In September, a State Farm field adjuster inspected the Homeowners' property and reported finding minor damage to one shingle on the home's roof, missing and loose siding, missing fascia, cracked ceiling texture in the living room, moderate damage to the garage roof and the garage's paint, damage to a gate, and damage to a grill. State Farm paid the Homeowners $2,297.26, representing what State Farm had determined to be the ACV of the loss minus the deductible.

In October, the Homeowners sent State Farm additional photos, an invoice for the fence repair, and another estimate. State Farm assigned an out-of-state claim specialist, Tony Swindoll, to handle the claim, and he reviewed the materials remotely. State Farm revised its estimate and paid the Homeowners an additional $3,822.68.

The Homeowners retained DHI Roofing to estimate the cost of repairs. Jonathan Pugsley of DHI Roofing determined that the home needed a total roof replacement. He sent State Farm additional photos and an estimate of $21,537.45 for repairs to the property. According to State Farm's claim notes, Swindoll reviewed the additional materials and decided that the damage was minimal, and a team leader also reviewed the materials and determined that no additional inspection was needed and that the roof did not need to be replaced. On November 5, State Farm told the Homeowners that it would not reinspect the roof. Pugsley then informed State Farm that there were multiple damaged shingles and that there was no well-sheathed surface to which the shingles could be nailed, as required by the International Residential Code. Thereafter State Farm ordered a second inspection of the siding by a different field adjuster and authorized the field adjuster to reinspect the roof if he thought it necessary. The field adjuster did so, and he did not recommend replacing the roof but did find damage to one or two additional shingles, a ridge cap, and the drip edge. He also noted there was a missing tab. State Farm then adjusted its estimate and, on December 7, paid the Homeowners $119.75.

From late fall 2020 into spring 2021, the Homeowners and State Farm continued to disagree about whether the roof needed to be replaced. State Farm's

claim notes show that State Farm was aware that the decking[5] was spaced but still considered it capable of having shingles nailed to it if the new nails were placed in the same locations as the pre-existing nails. Pugsley disagreed and forwarded an email from the local building inspector stating that the building code applied to repairs and not only to new construction. Pugsley also informed State Farm that there were greater than one-quarter-inch gaps in the decking. But State Farm's claim notes show that the current decking had been used for a shingle replacement 10 or 12 years earlier. State Farm's claim notes show that, in March 2021, Pugsley again sought replacement of the entire roof because of granular loss and an inability to match the shingles. State Farm responded that any difference in appearance could be addressed after completing the repairs. In April, the Homeowners requested another inspection; State Farm denied this request.

Throughout this period, the Homeowners and State Farm also disagreed about other repairs. The Homeowners obtained a quote for interior work that was greater than State Farm's estimate. State Farm did not increase its estimate, but Swindoll offered to review additional information. And there was also an issue with the siding. State Farm and Pugsley each mailed samples of the siding to third parties so that they could find a match. State Farm's matching service showed that Community Builders Supply Company carried matching siding, but that company informed Pugsley that it could not get the siding. Pugsley shared this information with State Farm and sought replacement of all the siding. On January 25, 2021, State Farm provided Pugsley with contact information for a siding distributor that was supposed to have the correct siding in stock. On March 1, Pugsley again asked for total replacement of the siding, stating that the distributor had a limited amount of siding and that the new siding probably would not match.

The Homeowners complained about Swindoll to their insurance agent, noting that Pugsley had said that Swindoll was rude. Based on their interactions with

---

[5]A roof deck is "[t]he flat or sloped surface not including its supporting members or vertical supports." 2018 Int'l Residential Code § R202.

Swindoll, Kelsey and Henderson both considered Swindoll to be a "bully." R. Doc. 22-5, at 102; R. Doc. 22-6, at 6. Kelsey spoke to Swindoll on two occasions during the claims process but also called State Farm two or three times without getting a response. According to Henderson, early in 2021, State Farm stopped answering his calls. The Homeowners filed a complaint with the Iowa Insurance Division, but the Division declined to intervene.

On August 2, 2021, the Homeowners requested an appraisal of their claim and an extension of the limitation period for filing suit. State Farm did not extend the limitation period. The Homeowners filed suit in state court on August 9, bringing claims for breach of contract, bad faith, and declaratory judgment and injunctive relief, seeking to enforce the appraisal clause. Pursuant to the policy, State Farm asked the Homeowners for itemized documentation of disputed damages. In response, Pugsley sent State Farm an RCV estimate of $41,049.79.

State Farm removed the action to federal court. While the action was pending, State Farm and the Homeowners engaged in the appraisal process. In March 2022, the appraisers set the ACV at $16,155.48 and the RCV at $21,069.59. The appraisers determined that the roof should be replaced. State Farm immediately paid the Homeowners $9,096.20, the difference between the amount it had already paid and the new ACV. It also informed the Homeowners that to obtain RCV funds, they would need to complete repairs by August 10, 2022; notify State Farm within 30 days of completion; and submit documentation showing that completion. State Farm also stated:

> Without waiving the above requirements, we will consider paying replacement cost benefits prior to actual repair or replacement if we determine repair or replacement cost will be incurred because repairs are substantially under way, or we are presented a signed contract acceptable to us. State Farm is not waiving any of the policy coverage, limitations, exclusions, or provisions all of which are specifically reserved.

R. Doc. 22-6, at 116.

At his deposition on August 26, 2022, Henderson stated that he had repaired the roof but had no money to repair the siding. On the same day, Kelsey stated in her deposition that they had not begun repairing the siding because they could not find matching siding.

On September 2, State Farm moved for summary judgment, arguing that it had paid the Homeowners everything to which they were entitled because it had paid the full ACV amount and the Homeowners had never submitted documentation showing that they were entitled to the RCV. It also argued that it had objectively reasonable bases for its payment decisions, thus negating the bad-faith claim. The Homeowners countered that State Farm was required to pay the entire appraisal award within 60 days of the appraisal. They contended that even if the policy required the Homeowners to make repairs before claiming the RCV, impossibility excused their performance. They also attached a contract dated August 1, 2022, for replacement of or repairs to the roof, garage roof, and siding. In its reply, State Farm noted that it was still evaluating the claim for payment of additional funds.

On December 20, 2022, the district court granted summary judgment to State Farm on the breach-of-contract and bad-faith claims.[6] The court held that State Farm had not breached the contract because it was only required to pay RCV benefits upon receipt of documentation showing that the Homeowners had made repairs. The court noted that

> State Farm agrees that it is bound by the appraisal award, which includes the RCV determination. The current legal issue before me is simply whether the Homeowners were entitled to this payment 60 days after the appraisal award, regardless of whether they repaired or replaced any items covered by the appraisal award.

---

[6]Both parties agreed that the claim for declaratory judgment and injunctive relief was moot.

-6-

*Henderson v. State Farm Fire & Cas. Co.*, 649 F. Supp. 3d 748, 760 n.4 (N.D. Iowa 2022). The court also held that State Farm had an objectively reasonable basis for rejecting the Homeowners' original request for a full roof replacement.

The Homeowners moved to alter or amend the judgment under Federal Rule of Civil Procedure 59(e) or for relief under Rule 60(b)(6). They argued that the court's judgment eliminated their recourse if State Farm refused to pay the RCV even after receiving documentation of repairs. State Farm responded that the policy required the Homeowners to complete repairs within two years of the date of damage to obtain the RCV. State Farm pointed out that the Homeowners had submitted documentation after the expiration of that two-year period, but it noted that it had paid the Homeowners part of the RCV after they submitted that documentation.

The district court denied the Homeowners' post-judgment motion. The Homeowners appeal.

## II. *Discussion*

The Homeowners argue that the district court lacked jurisdiction over the action. Alternatively, they contend that the district court erred in granting summary judgment to State Farm on the breach-of-contract and bad-faith claims. We hold that the district court had jurisdiction over this action and appropriately granted summary judgment to State Farm on both claims.

### A. *Standard of Review*

We review de novo whether the district court had jurisdiction. *Wagstaff & Cartmell, LLP v. Lewis*, 40 F.4th 830, 839 (8th Cir. 2022). We also review de novo the district court's entry of summary judgment. *N. Bottling Co. v. Pepsico, Inc.*, 5 F.4th 917, 922 (8th Cir. 2021). "Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* "[W]e consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Id.*

(internal quotation marks omitted). "A movant for summary judgment bears the initial responsibility of informing the court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact." *Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 792 (8th Cir. 2012). The nonmovant must then "respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." *Id.*; *see also JRT, Inc. v. TCBY Sys., Inc.*, 52 F.3d 734, 739 (8th Cir. 1995) ("[W]ith [the defendant] having shown an absence of facts supporting [the plaintiff's] claim of the bad faith required for a finding of fraud . . . the burden was upon [the plaintiff] to raise a genuine issue regarding [the defendant's] alleged bad faith."); Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment ("[A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact.").

## B. *Jurisdiction*

The Homeowners suggest that the district court lacked subject matter jurisdiction because the amount in controversy did not exceed $75,000. They contend that State Farm could not remove the action in reliance on the Homeowners' claim for bad faith knowing that it would seek summary judgment on that claim.

Under 28 U.S.C. § 1332(a)(1), district courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." The Supreme Court has held that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by [28 U.S.C.] § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). Furthermore, "jurisdiction is measured at the time of removal." *Pudlowski v. St. Louis Rams, LLC*, 829 F.3d 963, 964 (8th Cir. 2016) (per curiam).

The Homeowners did not include an amount in controversy in their petition in state court. State Farm removed the action, explaining in its notice of removal that it believed the amount in controversy was greater than $75,000. The Homeowners did not contest the removal. And prior to removal, the Homeowners estimated their loss at $41,049.79, approximately $35,000 of which was unpaid at that time. Additionally, under Iowa law, a bad-faith claim can support punitive damages. *See Nassen v. Nat'l States Ins. Co.*, 494 N.W.2d 231, 238 (Iowa 1992). The Homeowners specifically sought punitive damages in their complaint.

The Homeowners rely on two of our precedents holding that there was no jurisdiction because the amount in controversy was inadequate. *See Floyd Cnty. Mut. Ins. Ass'n ex rel. McGregor v. CNH Indus. Am. LLC*, 18 F.4th 1024, 1029 (8th Cir. 2021); *James Neff Kramper Fam. Farm P'ship v. IBP, Inc.*, 393 F.3d 828, 834 (8th Cir. 2005). These cases are inapposite. In *Floyd County Mutual Insurance*, we held that there was no subject-matter jurisdiction because the plaintiff had sought damages that could not be recovered as a matter of law. 18 F.4th at 1029. The claim itself was not at issue; the question was whether the damages the plaintiff sought were recoverable under state law. *Id.* Similarly, in *James Neff Kramper*, we held that removal was improper because it was implausible that the damages could be greater than $75,000 even if the plaintiff proved its claim. 393 F.3d at 831, 834. Both cases dealt with whether certain damages were recoverable. Neither of these cases suggest that a defendant who removes a case is precluded from seeking summary judgment on the *merits* of a claim that supported the amount in controversy.

"[O]ur jurisdictional inquiry focuses on the claims made at the time of removal, such that certain subsequent events—for example, the dismissal of one or more claims or parties—do not divest us of jurisdiction . . . ." *Id.* at 834. At the time of removal, the Homeowners' estimate of $35,000 in unpaid insurance benefits, combined with the prospect of punitive damages and injunctive relief, demonstrated that the potential damages at issue exceeded the jurisdictional threshold. Thus, the district court had jurisdiction.

## C. *Breach of Contract*

The Homeowners argue that State Farm breached the insurance contract by making it impossible for them to perform repairs before the two-year deadline and by failing to timely adjust their losses.

Iowa law applies to this diversity action. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Under Iowa law, to prevail on a breach-of-contract claim, a party must prove

> (1) the existence of a contract; (2) the terms and conditions of the contract; (3) that it has performed all the terms and conditions required under the contract; (4) the defendant's breach of the contract in some particular way; and (5) that plaintiff has suffered damages as a result of the breach.

*Iowa Arboretum, Inc. v. Iowa 4-H Found.*, 886 N.W.2d 695, 706 (Iowa 2016) (quoting *Iowa Mortg. Ctr., L.L.C. v. Baccam*, 841 N.W.2d 107, 111 (Iowa 2013)).

### 1. *The Homeowners' Failure to Make Repairs Within Two Years*

Certain contract terms constitute conditions precedent. One party's failure to perform these terms will prevent the other party from having any duty to perform. *See Nat'l Farmers Org., Inc. v. Lias*, 271 N.W.2d 751, 754 (Iowa 1978). "A determination that a condition precedent exists depends not on the particular form of words used, but upon the intention of the parties gathered from the language of the entire instrument." *ARDI Exch. v. Valley Nat'l Bank*, 493 N.W.2d 862, 864 (Iowa 1992) (quoting *Khabbaz v. Swartz*, 319 N.W.2d 279, 283 (Iowa 1982)). If an insurance policy includes a term as a condition precedent to the insurer's performance, the insured must prove "(1) substantial compliance with the condition precedent; (2) the failure to comply was excused or waived; or (3) the failure to comply was not prejudicial to the insurer." *Am. Guar. & Liab. Ins. Co. v. Chandler Mfg. Co.*, 467 N.W.2d 226, 228 (Iowa 1991). "[A] substantial breach of a condition

precedent which is not excused or waived must be presumed prejudicial to the insurer." *Id.*

Here, the policy expressly stated that State Farm would pay only the ACV until repairs were completed. The Homeowners have abandoned their argument that the policy required State Farm to pay them the RCV within 60 days of the appraisal even absent repairs. Instead, they argue that their failure to make repairs within two years should have been excused based on substantial compliance, impossibility, waiver, lack of prejudice to State Farm, and prejudice to themselves.

## a. *Substantial Compliance*

The Homeowners argue that they substantially complied with the conditions precedent by submitting receipts as they completed repairs. But the policy required them to both complete repairs within two years *and* give State Farm notice thereof within 30 days of completion. They have pointed to no unreimbursed outstanding receipts that they have submitted. Four months elapsed between the August 10, 2022 deadline to make repairs and the district court's entry of summary judgment. During those four months, the record remained open. The Homeowners only submitted one contract for repairs during that time, a late submission in September. The Homeowners, however, do not dispute that State Farm paid them a portion of the RCV based on this late submission. The undisputed facts support the district court's conclusion that the Homeowners have not substantially complied with the requirements for further payment. Because they neither finished the repairs nor notified State Farm thereof during this four-month period, they cannot show that they substantially complied with the conditions precedent.

## b. *Impossibility*

The Homeowners argue that State Farm's delay in making a substantial payment constituted an anticipatory breach and rendered it impossible for them to

-11-

repair their property by the August deadline.[7] They also point to widespread damage from the derecho, a shortage of contractors, and COVID-19 as contributing to the impossibility, and they note that the Iowa Insurance Commissioner asked insurers to extend deadlines to make repairs.

Impossibility of performance excuses "nonperformance generally where that which has been promised becomes *objectively* impossible to perform due to no fault of the nonperforming party." *Nora Springs Coop. Co. v. Brandau*, 247 N.W.2d 744, 747 (Iowa 1976). But "ordinarily a contingency which reasonably may have been anticipated must be provided for by the terms of the contract, or else the impossibility of performance resulting therefrom does not operate as an excuse." *Id.*

The Homeowners rely on *Conrad Brothers v. John Deere Insurance Co.*, in which the Supreme Court of Iowa noted that "[i]t is widely recognized that a party may not rely on a condition precedent when by its own conduct it has made compliance with that condition impossible." 640 N.W.2d 231, 240 (Iowa 2001) (internal quotation marks omitted). The Homeowner's reliance on *Conrad Brothers* is misplaced, as that case is distinguishable. In *Conrad Brothers*, the court held that the insurer had repudiated the contract by informing an assignee that it would not pay the replacement cost. *Id.* at 235, 242. The court noted that "when two parties differ as to the interpretation of a contract, the mere demand by one party that the contract be performed according to its interpretation does not . . . constitute repudiation" unless "accompanied by a clear expression of intent not to perform under any other interpretation." *Id.* at 241–42. Here, State Farm never denied liability. State Farm disagreed with the Homeowners about the amount due, but State

---

[7]The Homeowners suggest that State Farm shifted its argument between its original summary judgment motion and its brief in this court. But the Homeowners raised impossibility in their resistance to State Farm's motion for summary judgment, and they were on notice of their burden to produce evidence supporting that argument in case the district court interpreted the policy in accordance with State Farm's understanding. *See generally Gannon Int'l*, 684 F.3d at 792 (discussing the burden to produce evidence to resist summary judgment).

Farm never clearly expressed an intent not to perform if, for example, the Homeowners invoked the contractual appraisal process. State Farm did not repudiate the contract.

By the fall of 2020, the Homeowners knew that State Farm disagreed with their assessment that the roof needed to be replaced. But the Homeowners waited until August 2021 to initiate the appraisal process, which was not completed until March 2022.[8] At that point, State Farm paid the full ACV. The Homeowners still had nearly five months to repair their property. They point to a shortage of contractors, the widespread storm damage, and COVID-19 as factors contributing to impossibility. But the record does not support a finding that these factors made it impossible for the Homeowners to complete the repairs by August 2022. The only evidence the Homeowners submitted on this issue was a bulletin from the Iowa Insurance Commission prepared in July of 2021. This bulletin may show why repairs were difficult to make in 2021, but it does not show that it was impossible for the Homeowners to make repairs in 2022. And in their depositions, the Homeowners blamed other factors for their inability to make repairs. They did not say that it had been impossible for them to complete the repairs because of the contractor shortage, the widespread damage, or COVID-19. The Homeowners have not shown that their failure to perform the conditions precedent to payment of the RCV should be excused based on impossibility.

### c. *Waiver*

The Homeowners argue that State Farm waived the two-year deadline by paying them a portion of the RCV on September 30, 2022—after the August 10 deadline. They contend that State Farm represented to the district court that it was continuing to review receipts even after the deadline.

---

[8]The Homeowners suggested, in their resistance to summary judgment, that the delay between their initial appraisal demand and the award was due in part to settlement negotiations.

Waiver is "the voluntary or intentional relinquishment of a known right." *Scheetz v. IMT Ins. Co. (Mut.)*, 324 N.W.2d 302, 304 (Iowa 1982) (en banc) (quoting *Travelers Indem. Co. v. Fields*, 317 N.W.2d 176, 186 (Iowa 1982)). It "can be shown by the affirmative acts of a party, or . . . inferred from conduct that supports the conclusion waiver was intended." *Id.* Whether a party has waived a contract provision is generally a question for the trier of fact. *Id.*

State Farm did not waive the two-year deadline. State Farm explicitly stated its intention to stand on its contractual rights. Every time State Farm issued a payment—including when it paid the ACV value in March—it informed the Homeowners of the impending deadline. State Farm did suggest that it would consider paying out sums for repairs started or contracted for before the two-year deadline. It did not suggest, however, that it would pay the Homeowners for repairs begun after the deadline. The record shows that State Farm made one payment after the two-year deadline, but that was in response to a contract the Homeowners submitted that was dated August 1, before the deadline. That documentation was submitted in September, after the 30-day deadline for notice. In making that payment, State Farm could arguably have waived the *notice* deadline. But there is no indication that State Farm ever waived the two-year *repair* deadline. It specifically reserved its rights.

Although waiver is generally a question for the trier of fact, here there is no evidence showing that State Farm waived the two-year deadline. Thus, there is no genuine issue of material fact as to waiver.

d. *Lack of Prejudice to State Farm*

As noted above, Iowa courts will presume that an insurer is prejudiced by an insured's "substantial breach of a condition precedent" unless the breach is excused or waived. *Am. Guar. & Liab. Ins.*, 467 N.W.2d at 228. Because the Homeowners failed to show that their breach was excused or waived, the district court could presume that the breach was prejudicial to State Farm, and the Homeowners had the burden of rebutting that presumption. *Simpson v. U.S. Fid. & Guar. Co.*, 562 N.W.2d

-14-

627, 632 (Iowa 1997). But the Homeowners never argued in the district court that their failure to make repairs within two years did not prejudice State Farm. And even if they had, the record does not show that they could have overcome the presumption of prejudice.

### e. *Prejudice to the Homeowners*

Relatedly, the Homeowners argue that they have been prejudiced by the district court's order. But they point to no precedent suggesting that prejudice to the nonperforming party is an independent ground for excusing performance of a condition precedent. Furthermore, Iowa contract law recognizes that the purpose of requiring insureds to complete repairs before collecting RCV funds is to prevent insureds from profiting from their losses. *See Pierce v. Farm Bureau Mut. Ins. Co.*, 548 N.W.2d 551, 554 (Iowa 1996). Here, State Farm did not automatically owe the Homeowners the RCV. The RVC served as a cap on State Farm's reimbursement for repairs made by the Homeowners. The Homeowners were not unfairly prejudiced so as to relieve them from compliance with the two-year deadline.

### f. *Summary*

The Homeowners have not shown that they are entitled to relief from the condition precedent requiring them to make repairs within two years and to notify State Farm thereof. Therefore, State Farm did not breach the contract when it declined to pay the Homeowners the remaining RCV.

### 2. *Failure to Timely Adjust the Loss*

The Homeowners also argue that State Farm breached the insurance contract by failing to timely adjust their loss. As discussed, to prevail on a claim for breach of contract, the Homeowners must prove that they "suffered damages as a result of the breach." *Iowa Arboretum*, 886 N.W.2d at 706 (internal quotation marks omitted); *see also Seneca Waste Sols., Inc. v. D&K Managing Consultants, LLC*, No. 13–1777, 2015 WL 567272, at *9 (Iowa Ct. App. Feb. 11, 2015) (unpublished table decision) (affirming judgment for the defendant on a breach-of-contract claim when the plaintiff failed to prove damages). In Iowa, consequential damages are generally not

recoverable for breach of an insurance contract. *Brown Twp. Mut. Ins. Ass'n v. Kress*, 330 N.W.2d 291, 298–300 (Iowa 1983). The Iowa Supreme Court has quoted with approval the statement that

> [i]n accordance with the rule that the general measures of damages, in an action for breach of a contract to pay a sum of money, and in the absence of special circumstances in the contemplation of the parties at the time of the making of the contract, is the principal sum agreed to be paid by the terms of the contract, with legal interest thereon, it has been held that consequential damages, resulting from the failure or delay of an insurer in making payments due under an insurance contract are, as a general proposition, and without regard to any special circumstances indicating that such damages were within the contemplation of the parties, not recoverable, limiting recovery for such breach of contract to the amount due under the policy, with interest.

*Id.* at 298 (quoting 47 A.L.R.3d 314, 326 (1973)). The Homeowners point out that *Brown Township* was decided before Iowa recognized a cause of action for first-party bad-faith refusal to pay insurance benefits. But we do not think the Iowa Supreme Court's later recognition of a cause of action for bad faith expanded the available damages for ordinary breach of an insurance contract. The Homeowners also rely on *Royal Indemnity Co. v. Factory Mutual Insurance Co.*, 786 N.W.2d 839 (Iowa 2010), to advance their argument. *Royal Indemnity* is of limited help to the Homeowners because that case dealt with damages for breach of a contract "to provide loss prevention services," which were "under a separate payment-for-services contract and fee unrelated to [the insured's] insurance policy premiums." *Id.* at 842. And in any case, the court in *Royal Indemnity* decided that the damages at issue were not recoverable. *Id.* at 853.

The Homeowners have not shown that, at the time they entered the contract with State Farm, any special circumstances existed demonstrating that they and State Farm contemplated additional recoverable damages. *See Brown Twp.*, 330 N.W.2d at 298. The measure of the Homeowners' damages for breach of contract would have

been the amount State Farm owed them under the policy, which State Farm has already paid.[9]

The Homeowners have not shown that State Farm breached the contract in a manner that caused them any compensable damage. Therefore, the district court correctly granted summary judgment to State Farm on the Homeowner's claim for breach of contract.

## D. *Bad Faith*

The Homeowners argue that State Farm is liable for bad faith because it remotely adjusted their claim, placed the burden on them to adjust the claim, ignored Iowa's line-of-sight and sheathing requirements, and unreasonably delayed in making a proper payment.

To establish a claim for bad faith, the plaintiff must prove that "(1) [the defendant] had no reasonable basis for denying the plaintiff's claim . . . and (2) the defendant knew or had reason to know that its denial or refusal was without reasonable basis." *Bellville v. Farm Bureau Mut. Ins. Co.*, 702 N.W.2d 468, 473 (Iowa 2005). The first element is objective; the second, subjective. *Id.* "A reasonable basis exists for denial of policy benefits if the insured's claim is fairly debatable either on a matter of fact or law"; that is, "if reasonable minds can differ." *Id.* This is generally a question for the court. *Id.* "The fact that the insurer's position is ultimately found to lack merit is not sufficient by itself to establish the first element of a bad faith claim." *Id.* Instead, the question is "*whether evidence existed* to justify denial of the claim." *Id.* at 474 (internal quotation marks omitted). A "negligent or sub-par investigation or evaluation of a claim" will not give rise to liability "if the insurer in fact has an objectively reasonable basis for denying the claim." *Id.* (internal quotation marks omitted). And an insurer need not "disregard the opinion of its own expert in favor of the insured's expert's opinion." *Luigi's, Inc. v. United*

---

[9]The Homeowners did not raise the issue of interest either here or before the district court, so we decline to consider whether interest is recoverable after an insurer pays an appraisal award.

*Fire & Cas. Co.*, 959 N.W.2d 401, 408 (Iowa 2021) (internal quotation marks omitted).

The Homeowners take issue with State Farm's method of evaluating their claim, specifically its reliance on an out-of-state adjuster who just looked at pictures and materials submitted by an inspector who physically visited the property. The Homeowners failed to show that State Farm's use of Swindoll and two different inspectors makes State Farm's process unreasonable. They also have not shown that Iowa law imposes a duty on insurers to have the same person physically inspect the property and complete adjustment for the claim.

The Homeowners also argue that State Farm breached the duty of good faith by burdening them with responsibility for adjusting the claim. We are not persuaded. State Farm sent an inspector to the property, adjusted the claim, and paid the Homeowners. The Homeowners then submitted additional materials and obtained a larger award. State Farm eventually sent a second inspector to the property and revised the award again. The Homeowners, still dissatisfied, disputed State Farm's valuation of their loss through their own contractor. The appraisal process proceeded as contemplated by the contract. The Homeowners were vindicated when the appraisal was complete; State Farm was wrong about the value of the loss. However, State Farm's lower valuation, without more, does not show bad faith.

Additionally, the Homeowners argue that State Farm improperly ignored Iowa law. They contend that State Farm committed an "[u]nfair claim settlement practice[]" by "[c]ompelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds." Iowa Code § 507B.4(3)(j)(7). But Iowa Code § 507B.4(3)(j) provides that such conduct constitutes an "[u]nfair claim settlement practice[]" when it is "[c]ommitt[ed] or perform[ed] with such frequency

-18-

as to indicate a general business practice."[10] Thus, Iowa Code § 507B.4(3)(j)(7) does not require insurers to be invariably correct about the value of losses. And as the Homeowners concede, Iowa Code § 507B.4 does not create a cause of action, *Bates v. Allied Mut. Ins. Co.*, 467 N.W.2d 255, 260 (Iowa 1991), though a violation may be relevant to a bad-faith inquiry, *see B&F Jacobson Lumber & Hardware, L.L.P. v. Acuity*, 852 N.W.2d 20, 2014 WL 1714968, at *9 (Iowa Ct. App. Apr. 30, 2014) (unpublished table decision). Here, though, the Homeowners have not shown that State Farm violated Iowa Code § 507B.4(3)(j)(7) because they have not shown that State Farm's general business practice includes offering less than the value of a claim.

The Homeowners also contend that State Farm acted in bad faith by failing to comply with Iowa's line-of-sight rule. An Iowa regulation states:

> When a loss requires replacement of items and the replaced items do not match in quality, color or size, the insurer shall replace as much of the item as is necessary to result in a reasonably uniform appearance within the same line of sight. . . . Exceptions may be made on a case-by-case basis.

Iowa Admin. Code r. 191-15.44(1)(b) (2024).

The undisputed facts show that State Farm did not disregard this regulation. Rather, they show that the company found a source for potentially matching siding

---

[10]*Cf. Thielen v. Aetna Cas. & Sur. Co.*, 662 N.W.2d 370, 2003 WL 118204, at *7 (Iowa Ct. App. 2003) (unpublished table decision) ("Even if we assume without deciding that [Iowa Code § 507B.4(9)] might under certain circumstances create a private cause of action for bad faith against a workers' compensation insurer who fails to timely investigate a claim or to timely notify its insured of a decision to deny a claim, we would conclude that the district court correctly declined to instruct the jury as to the existence of such a duty in this case. There is no evidence in this record that [the insurer] failed to investigate claims or timely deny claims with such frequency as to constitute a general business practice.").

for the Homeowners. And when Pugsley informed State Farm that the source it had suggested did not have the siding, State Farm found another source for the siding and sent Pugsley contact information for that source. The record does not show whether Pugsley ever tried to purchase siding from that source. But State Farm's claim notes indicate that on March 1, 2021, Pugsley called and expressed concern that the siding probably would not match and raised the issue of whether the new shingles would match. State Farm responded that Pugsley should go ahead and replace the siding and shingles and then submit photographs of the shingles if they did not match. Although Pugsley expressed concern that the siding and shingles *would not* match, the Homeowners have not shown that they or Pugsley ever presented State Farm with any evidence that, after inspection, the available siding or shingles *did not* match. *See Bellville*, 702 N.W.2d at 477–78 ("[A]n insurance company is not obligated to disregard the opinion of its own expert in favor of the insured's expert's opinion. . . . [T]here is no clearly defined duty of investigation on an insurer; the insurer may require the insured to present adequate proof of loss before paying the claim." (cleaned up)). This record fails to show that State Farm disregarded the line-of-sight regulation. Instead, it shows the company tried to provide materials that would result in a reasonably uniform appearance.

As for the roof, the claim notes suggest that State Farm believed the new shingles would match or could be fixed later. The record does not show why Pugsley thought the new shingles would not match, nor whether he was correct in that belief. Having performed two inspections and adjusted the claim, State Farm was under no obligation to accept Pugsley's opinion that new shingles would not match, in the absence of additional objective evidence, such as a third-party report, supporting his opinion. *See Bellville*, 702 N.W.2d at 477–49 (noting that, once the insurer has a reasonable basis for denying a claim, the insurer has no further duty to investigate, and the insured bears the burden of proving entitlement to compensation). State Farm had a reasonable basis for its decision not to replace all the shingles.

The Homeowners, through Pugsley, also brought to State Farm's attention a provision of the 2018 International Residential Code (IRC) providing that "[a]sphalt

shingles shall be fastened to solidly sheathed decks." 2018 IRC § R905.2.1. The 2018 IRC has been adopted by the City of Cedar Rapids. Cedar Rapids, Iowa, Code § 33.01 (2019). It applies to both new construction and repairs. 2018 IRC § R101.2. Does the IRC require replacement of all nonconforming parts of a roof when replacing damaged shingles? No, it does not. The IRC provides that "[a]dditions, alterations or repairs to any structure shall conform to the requirements for a new structure without requiring the existing structure to comply with the requirements of this code, unless otherwise stated." *Id.* § R102.7.1 (emphasis omitted).

In a similar case, the Fifth Circuit held that the 2000 IRC did not require a homeowner to replace undamaged spaced decking with solid sheathing when repairing his roof after a storm. *Toney v. State Farm Lloyds*, 661 F. App'x 287, 292 (5th Cir. 2016) (unpublished per curiam). In *Toney*, a building inspector had initially issued a letter stating that spaced decking did not satisfy the 2000 IRC but had later clarified that undamaged decking did not need to be replaced. *Id.* at 288–89. The 2000 IRC incorporated an explicit statement that "[p]ortions of the structure not altered and not affected by the alteration are not required to comply with the code requirements for a new structure." *Id.* at 291–92 (alteration in original) (quoting 2000 Int'l Bldg. Code § 3402.1). In holding that the 2000 IRC did not require replacement of the undamaged decking, the Fifth Circuit also noted that the provisions requiring repairs to conform to the Code "only require that the materials actually used and repairs actually undertaken conform to the requirements for newly constructed dwellings." *Id.* at 292.

Here, State Farm could have reasonably believed that the 2018 IRC did not require replacement of the roof's decking. The 2018 IRC specifically allows repairs without updates to "the existing structure," 2018 IRC § R102.7.1, and State Farm could have reasonably concluded that the existing decking was part of the existing structure. The email from the building inspector does not change this result, as it does not state that the entire roof would need to be replaced to remedy the spaced decking beneath the damaged shingles.

Finally, State Farm did not breach the duty of good faith by unreasonably delaying payment. As of December 2020, State Farm believed it had paid the Homeowners the full ACV. Although State Farm was wrong, as established by the appraisal, it had a reasonable basis for this belief—the inspections of two field adjustors and the estimates of Swindoll. Furthermore, as noted above, the Homeowners knew about the dispute in the fall of 2020 but did not seek an appraisal until August of 2021. The year-and-a-half that elapsed between the derecho and the ACV payment shows that a genuine dispute about valuation of the loss caused much of the delay.

Because State Farm had a reasonable basis for its evaluation of the claim, State Farm is not liable for bad faith, and we decline to consider the subjective element of the bad-faith inquiry.

### III. *Conclusion*

State Farm underestimated the Homeowners' loss. But it was not required to reimburse them for repairs unless those repairs were made within two years of the loss, nor is it liable for breach of contract or bad faith. Therefore, we affirm.

_____